UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RALPH B.,

                    Plaintiff,

            v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                    Defendant.

CASE NO. C17-6027-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1962.[1] He obtained a GED and previously worked as a cut-off saw operator I and cook helper. (AR 58.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed DIB and SSI applications in April 2014, alleging disability beginning December 31, 2010. (AR 196, 203.) Plaintiff remained insured for DIB through December 31, 2015 and was therefore required to establish disability on or prior to that "date last insured" (DLI). *See* 20 C.F.R. §§ 404.131, 404.321. His applications were denied initially and on reconsideration.

On May 9, 2016, ALJ Marilyn Mauer held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 55-72.) (*See also* AR 44-54 (prior hearing, without testimony, continued to allow development of the record).) On June 3, 2016, the ALJ issued a decision finding plaintiff not disabled. (AR 27-38.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on October 24, 2017 (AR 1), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found the following impairments severe: right shoulder severe instability; mild right shoulder AC joint arthritis; right supraspinatus tendinopathy; history of T6 and T7 compression fractures with surgical repair; and dysthymic disorder. Step three asks whether a claimant's impairments meet or equal a listed

impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform a range of light work, with the following limitations: never lift or carry any weight with his unassisted right arm; lift and carry twenty pounds occasionally and ten pounds frequently with both arms, so long as right arm does not move beyond forty-five degrees from neutral, and the same weights with the left arm by itself; sit for up to six hours in an eight-work workday, stand or walk continuously one hour at a time, and stand and walk in combination up to six hours; no restrictions on reaching or manipulation on the left; never push or pull with right arm; reach up to forty-five degrees with right hand, so long as can do so without moving shoulder more than forty-five degrees from neutral; never climb ladders, ropes, and scaffolds and never crawl; frequently climb ramps and stairs, stoop, crouch, kneel, and balance; work in setting with no exposure to hazards such as unprotected heights and large moving equipment; and understand, remember, and carry out simple instructions at all times and detailed, complex tasks occasionally. With that assessment, the ALJ found plaintiff unable to perform his past work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a gate guard and sales attendant.

This Court's review of the ALJ's decision is limited to whether the decision is in

accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in evaluating the medical evidence, his testimony, the RFC, and at step five. He requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Evidence</u>

Social Security regulations applicable to plaintiff's claim distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers, including nurse practitioners, are considered "other sources." 20 C.F.R. §§ 416.902, 416.913, and Social Security Ruling (SSR) 06-03p (rescinded effective March 27, 2017).[2]

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-

---

[2] New regulations, applicable to claims filed after March 27, 2017, include advanced practice registered nurses, audiologists, and physician assistants as "acceptable medical sources," and recognize other licensed heath care workers as "medical sources" and other sources of evidence as "nonmedical sources." 20 C.F.R. § 416.902(a), (d), (e).

examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). An ALJ must provide clear and convincing reasons for rejecting the opinion of a physician where it is not contradicted by another physician, or specific and legitimate reasons, supported by substantial evidence, for rejecting a physician's contradicted opinion. *Id*. at 830-31. The ALJ may assign less weight to the opinions of other sources, *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), and may discount their opinions by providing reasons germane to the source, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

A.    Dr. Jennifer Irwin

Consultative psychologist Dr. Jennifer Irwin examined plaintiff on November 18, 2014. (AR 403-07.) Dr. Irwin diagnosed dysthymic disorder and polysubstance abuse in full, sustained remission, and found the condition treatable, with a fair likelihood of recovery, and that plaintiff could improve in the next twelve months with treatment compliance. (AR 406.) She opined plaintiff is able to perform simple and repetitive tasks and some detailed and complex tasks, accept instructions from supervisors, interact with coworkers and the public, perform work activities on a consistent basis without special or additional instruction, can maintain regular attendance in the workplace, and can complete a normal workday/week without interruptions from a psychiatric condition, but would have difficulty dealing with the usual stress encountered in a workplace at this time. (AR 406-07.)

The ALJ gave great weight to all of Dr. Irwin's opinions except for her statement about difficulty dealing with usual workplace stress. (AR 35.) Her observations showed no reason why plaintiff cannot perform detailed and complex tasks and she found plaintiff able to maintain regular attendance and complete a normal work schedule. It was therefore unclear why Dr. Irwin also stated plaintiff would have difficulty dealing with usual workplace stress, whether the tasks were

simple or complex. Plaintiff has not sought psychiatric treatment and even stated he did not feel his mental health impairments were limiting at the time of the evaluation. The ALJ accorded the opinion as to stress little weight because it had no support in the record, in either the treatment notes or in Dr. Irwin's findings.

Plaintiff argues the ALJ improperly acted as her own medial expert, and that his reporting, slightly restricted affect, and inability to perform serial sevens past the first calculation supported Dr. Irwin's opinion as to workplace stress. (AR 405-06.) Plaintiff reported feeling homicidal towards guys who "ripped off" two radio-controlled cars, that he would "probably just cut their thumbs off and let them go," and responded "I don't know" when asked if he had any intention to do this. (AR 405.) He also reported hearing voices calling his name. Plaintiff denies any indication in the record he had sufficient understanding of psychiatry or insight into his mental state to be able to accurately describe his mental functional limitations.

The Court finds no error. The ALJ is responsible for resolving ambiguities and conflicts in the medical record. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Because there were no other medical opinions addressing plaintiff's mental functioning, the ALJ was required to provide clear and convincing reasons for rejecting an opinion of Dr. Irwin. The ALJ here provided a sufficient reason to reject one aspect of Dr. Irwin's opinion by finding it not supported in the record or in Dr. Irwin's own findings. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4) (supportability and consistency properly considered); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject an opinion upon finding it inconsistent with the

medical record); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ may reject opinion due to discrepancy or contradiction between opinion and physician's own notes or observations). Dr. Irwin observed plaintiff's polite and cooperative behavior and attitude, fair eye contact, logical and goal directed thought processes, normal speech, full orientation, intact memory and fund of knowledge, ability to recite serial threes to thirty and answer a math question with no error and to perform a three-step command and spell "world" forward and backward. (AR 405-06.) Plaintiff informed Dr. Irwin he can concentrate and persist to finish tasks, with okay pace. (AR 405.) The report is further notable in containing all of Dr. Irwin's other opinions supporting plaintiff's ability to function in the workplace, including, *inter alia*, the ability to complete a normal workday/week and as to improvement with treatment compliance. (AR 406.)

The ALJ rationally interpreted the report as a whole and other evidence in the record to reveal an absence of support for a limitation of difficulty with usual workplace stress. Plaintiff's alternative interpretation does not suffice to demonstrate error. *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

B.    Dr. Rebecca Speckman

Consultative physician Dr. Rebecca Speckman examined plaintiff on March 26, 2016. (AR 411-21.) Dr. Speckman opined plaintiff could frequently lift and carry up to ten pounds and occasionally up to twenty pounds, but should not use his right arm at all for lifting or carrying, could sit for six hours a day, stand for one hour at a time and for three hours total, and walk for the same amounts of time. (AR 411-12, 421.) He could frequently reach, handle, finger, and feel with his left upper extremity. (AR 421.) With his right, dominant extremity, he could never reach more than thirty to forty-five degrees and, within that range, could handle, finger, and feel frequently.

(*Id.*; *see also* AR 413, 416 (indicating, in a form separate from the narrative report, plaintiff could never push/pull on the right and could not work with files or perform any manual labor or carpentry due to his right shoulder).) He can never climb or crawl, can frequently balance, stoop, kneel, or crouch, and is limited by right shoulder instability. (AR 421; *see also* AR 414 (indicating in the form he could frequently climb stairs and ramps, but never ladders or scaffolds)). Finally, plaintiff is limited working at heights and around heavy machinery due to the fact he could experience a shoulder dislocation, but had no other environmental limitations. (AR 421; *see also* AR 415 (indicating in the form he could occasionally work at unprotected heights, near moving mechanical parts, and operate a motor vehicle if primarily using left arm/hand (e.g., automatic), and could frequently tolerate other environmental conditions).)

The ALJ found no obvious basis in the examination findings for any restrictions to the upper left extremity, noting plaintiff demonstrated no problems during the examination and has had no treatment for any problem on the left. (AR 35.) She gave the left upper extremity limitations little weight. The ALJ also gave little weight to the opinion plaintiff could never lift or carry any weight with the right upper extremity, finding it overly restrictive in light of plaintiff's testimony and reported daily activities, which include lifting up to twenty pounds. She gave all of the other opined restrictions great weight.

Plaintiff objects to the ALJ's rejection of Dr. Speckman's opinion he cannot lift or carry any weight with his right upper extremity. He again argues the ALJ impermissibly acted as her own medical expert and points to Dr. Speckman's extensive examination and many clinical findings as supporting her opinion. He contends the ALJ failed to recognize Dr. Speckman was rating his ability to perform tasks in a competitive work environment, and asserts his ability to lift up to twenty pounds on rare occasions in his home is fully consistent with her opinion.

Again, the Court finds no error. The record contains a contradictory opinion from non-examining physician Dr. Gordon Hale, who found, in relevant part, plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, with no separate limitation on lifting or carrying on the right. (AR 108-10, 125-27.) The ALJ was therefore required to provide specific and legitimate reasons for rejecting an opinion of Dr. Speckman.

An ALJ may reject a physician's opinion as inconsistent with other information in the record, including evidence of a claimant's level of activity. *See Tommasetti*, 533 F.3d at 1041; *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Morgan*, 169 F.3d at 602-03. In an October 2014 function report, plaintiff stated his right shoulder dislocates when moved above forty-five degrees and when lifting over ten pounds of weight, but also that he prepares his own meals twice a day, does laundry and loads the dishwasher, and could lift ten pounds. (AR 244, 246, 249.) At the 2016 hearing, plaintiff testified he performed chores including taking the garbage out, vacuuming, and caring for his two cats. (AR 62.) When asked if he had any difficulties using his right arm, he answered: "Picking up over time, over 40 pounds, my shoulder starts to dislocate, pops in and out. Just raising my arm up to like in a straight forward motion it's like, nope. Slides out real easy." (AR 62-63.) His physician had restricted him to lifting twenty pounds with his right arm. (AR 63.) When asked about his back, plaintiff stated he was "[n]ot able to lift over 40 pounds max." (AR 63.) Finally, plaintiff did not use his left arm to do things he used to do with his right arm because he had tried to do so unsuccessfully, such as using his left hand to cut with a knife, but did rely more on his left arm than his right in performing daily tasks. (AR 70-71.) The ALJ, as such, reasonably relied on plaintiff's own testimony and reporting as the basis for rejecting Dr. Speckman's opinion plaintiff could never lift or carry any weight with his right upper extremity.

C.    Teresa Garrison, ARNP

Treating nurse practitioner Teresa Garrison completed two physical evaluation forms.  On June 19, 2013, Garrison found plaintiff limited to sedentary work, but unable to lift with his right arm and with chronic back pain worse with physical activity.  (AR 327-28.)  Plaintiff's back impairment mildly or moderately interfered and his right shoulder pain moderately interfered with work-related activities.  (AR 327.)  The limitations would persist for six months.  (AR 328.)  On May 16, 2014, Garrison opined plaintiff was unable to lift more than five pounds with his right arm and had difficulty walking varied terrain, and that his right shoulder impairment markedly interfered and his right knee and back pain moderately interfered with work-related activities.  (AR 365.)  Garrison found plaintiff severely limited, meaning unable to meet the demands of sedentary work, with limitations persisting for twelve months.  (AR 366.)

The ALJ noted Garrison's first assessment did not satisfy the twelve-month durational requirement.  (AR 36.)  She acknowledged that, as a treating source, Garrison was in the best position to comment on plaintiff's work-related limitations, and found the assessed restrictions on the right upper extremity generally supported by imaging and physical examination findings.  However, the ALJ found the limitations to sedentary or less than sedentary work not well supported.    There was little basis to restrict plaintiff's ability to stand or walk, "and standing/walking for long periods is the main difference between sedentary and most light jobs."  (*Id*. (citing SSR 83-10).)  Both Dr. Speckman and Dr. Hale found plaintiff able to perform the standing and walking requirements of light work, and Garrison did not explain why plaintiff's impairments prevented the performance of the standing/walking requirements for most light jobs.  The ALJ gave great weight to the assessed right upper extremity restrictions, but little weight to the standing/walking restrictions implied by the limitation to sedentary or less work.

Plaintiff asserts that, considered together, Garrison's two opinions satisfy the twelve month durational requirement. He contends the finding of severe limitations in his dominant arm, pain with palpation of his thoracic and lumbar spine, knee pain and swelling, and difficulty walking on varied terrain both support and provide an explanation for the limitations to work that is sedentary or less. (*See* AR 326-27, 364-65.) He posits his inability to use his dominant arm would limit his ability to lift and carry, which would seriously limit his ability to perform any exertional level of work, and that his back and knee limitations would limit his ability to stand and walk. Even if he could perform the standing and walking requirements of light work, it does not mean he could perform the lifting, carrying, and postural activities of such work. Plaintiff also rejects the contention the somewhat different opinion of Dr. Speckman serves, by itself, as a valid reason to reject the opinion of Garrison.

The ALJ accurately observed Garrison initially estimated limitations lasting only six months, under the twelve-month durational requirement necessary to establish disability. *See* 42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. §§ 404.1505, 1509. Garrison's second opinion came almost a full year later, months after the initial estimate expired.

The ALJ did not rely alone on differences between the opinions of Garrison and Dr. Speckman. An ALJ may, in any event, properly rely on inconsistencies between medical opinions in rejecting opinion evidence. *Morgan*, 169 F.3d at 603 (ALJ appropriately considers inconsistencies within and between physicians' reports). The ALJ here reasonably assigned great weight to Garrison's finding of restrictions associated with plaintiff's right arm, while providing several germane reasons for rejecting the limitations to sedentary or less than sedentary work, including insufficient support, inconsistency with the evidence from Dr. Speckman and Dr. Hale, and the absence of a sufficient explanation. *See generally Tommasetti*, 533 F.3d at 1041

(inconsistency with the record properly considered); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to opinions that are explained than to those that are not."); *Morgan*, 169 F.3d at 603. *See also Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") While plaintiff takes a different view, the ALJ's interpretation of the evidence is at least equally rational and supported by substantial evidence. *See, e.g.*, SSR 96-9p ("The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally [. . . meaning ] very little up to one- third of the time, and . . . generally . . . no more than about 2 hours of an 8-hour workday."); SSR 83-10 ("The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.")

D. Dr. Hale and Other Medical Evidence

Plaintiff argues the ALJ improperly gave too much weight to the opinion of Dr. Hale and that neither Dr. Hale's familiarity with Social Security regulations and rulings, nor his qualifications justify giving the opinion any weight. However, non-examining State agency medical and psychological consultants are highly qualified and experts in the evaluation of Social Security disability claims and, while not binding, their opinions must be considered. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). While it would not alone suffice, the ALJ may reject the opinion of a treating or examining physician "based, *in part* on the testimony of a nontreating, nonexamining medical advisor." *Morgan*, 169 F.3d at 602. *See also Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) ("[T]he findings of a nontreating, nonexamining physician can amount to

substantial evidence, so long as other evidence in the record supports those findings.") The ALJ here reasonably found the opinion of Dr. Hale generally consistent with the medical evidence and with the physical limitations set forth by Dr. Speckman, and reasonably assigned the opinion great weight. The ALJ also properly relied on more than just the opinion of Dr. Hale in rejecting one limitation assessed by Dr. Speckman. Plaintiff does not demonstrate error in relation to Dr. Hale.

Nor does plaintiff demonstrate error in asserting the consistency of other medical evidence with the opinions of Dr. Speckman, Ms. Garrison, and his own testimony. The Court finds no error in the ALJ's assessment of opinion evidence or plaintiff's testimony for the reasons described herein. Plaintiff's recitation and summary of other medical evidence does not contain a specific assignment of error requiring further consideration. *See Carmickle*, 533 F.3d at 1161 n.2 (declining to address issues not argued with any specificity) (citing *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)).

## Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[3] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

---

[3] While the Social Security Administration eliminated the term "credibility" from its sub-regulatory policy addressing symptom evaluation, *see* SSR 16-3p, case law containing that term remains relevant.

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not consistent with the medical or other evidence. As described below, she provided several specific, clear, and convincing reasons in support of that conclusion.

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857; SSR 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.") An ALJ may reject symptom testimony upon finding it contradicted by or inconsistent with the medical record, *Carmickle*, 533 F.3d at 1161; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001), and, so long as other reasons are provided, as lacking the support of objective medical evidence, *Rollins*, 261 F.3d at 857. *Accord* SSR 16-3p ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms *solely* because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.") (emphasis added).

An ALJ may also consider inconsistencies in a claimant's reporting, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006), and inconsistency between a claimant's symptom testimony and evidence of the claimant's conduct or activities, *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009). Medications, treatments, or other methods used to alleviate symptoms are "an important indicator of the intensity and persistence" of a claimant's symptoms. §§ 404.1529(c)(3),

416.929(c)(3), SSR 16-3p.  An ALJ may consider, for example, unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti*, 533 F.3d at 1039, or the use of conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).  An ALJ may also properly consider any "[o]ther factors concerning functional limitations and restrictions due to pain or other symptoms.  §§ 404.1529 (c)(3)(vii), 416.929 (c)(3)(vii).

The ALJ described plaintiff's allegations and the medical evidence in detail.  (AR 32-36.) She noted the record reflected no treatment during 2012, the first half of 2013, or in 2015, the year in which plaintiff is last insured for DIB.  (AR 33.)  The medical records described included Dr. Irwin's 2014 assessment of plaintiff's mental health problems as treatable, with a fair likelihood of recovery, and Dr. Speckman's 2016 report.  (AR 33-34.)  Dr. Speckman, for example, noted plaintiff's report he spent his time caring for his cats, shopping, cooking, and doing housework with his left arm only.  She observed plaintiff's ability to walk without assistance, sit comfortably, rise from a chair and get on and off a table without assistance, make a full fist with both hands, pick up a coin and manipulate a button and clothing, turn a doorknob with either hand, and full grip strength in both hands.

The ALJ found plaintiff's statements not entirely consistent with the evidence.  (AR 34.) She contrasted his written statement he could only lift ten pounds or his right shoulder would come out of its joint, with his testimony he could lift up to forty pounds before dislocating his shoulder, and the fact his doctor limited his lifting to twenty pounds.  (AR 34, 63.)  The ALJ credited evidence reflecting some work-related limitations for shoulder and back impairments, but found no evidence of a left arm limitation.  While there was evidence of a back disorder, plaintiff reported only tingling, and no significant problems with sitting, standing, or walking.

The ALJ considered plaintiff's use of medication and other treatment.  At hearing, plaintiff

testified he had only recently started to use pain medication, but the medications were prescribed to his sister, not to him.  (AR 34, 61, 71.)  Previously, he had "tried to stay away" from pain medications.  (AR 61.)  He had also tried to ignore the pain, rested, and used ice, twice a day, for thirty minutes at a time, three to four times a week.  (AR 34, 71-72.)  Plaintiff described his pain as about five and a half out of ten, which suggested he could perform work if it did not involve use of his right arm.  (AR 34, 71.)

The ALJ considered that plaintiff "continues to use his right arm for most tasks, even though he has been told not to by his doctor."  (AR 34.)  Specifically, plaintiff testified he was not currently using his left hand or arm to do tasks he used to do with his right arm, because he "tried for a while and it was way off."  (AR 70-71.)  However, he did rely more on his left arm than his right for daily activities.  Also, plaintiff did not testify to any significant mental health limitations that would impact his ability to work and, other than his location, could not state any reason he could not perform the gate guard occupation identified by the VE.  (AR 34, 72.)

The ALJ properly considered the lack of objective support in the medical evidence, inconsistencies with the medical evidence, and other inconsistencies in and between plaintiff's reporting, testimony, and evidence in the record.  The ALJ also appropriately considered plaintiff's testimony regarding his recent use of his sister's pain medication and the otherwise conservative measures used to treat his pain.

Plaintiff's suggestion the ALJ improperly relied on an absence of supportive objective medical evidence does not accurately reflect the ALJ's decision.  Nor can it be reasonably said the ALJ improperly speculated in assessing the evidence or improperly interpreted plaintiff's testimony.  The ALJ rationally interpreted the evidence and drew appropriate inferences.  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("Where evidence is susceptible of more

than one rational interpretation, it is the ALJ's conclusion which must be upheld. In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.").

As reflected above, the ALJ also noted significant periods of time in which it appeared plaintiff had not sought or received any treatment. The ALJ erred to the extent she relied on this absence of treatment without further inquiry. *See* SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.") It is also true plaintiff was not represented at hearing and may have, with representation, provided clarification or more information as to his limitations. However, the ALJ was nonetheless entitled to rely on plaintiff's testimony and provided more than one opportunity for plaintiff to elaborate as to his limitations. (AR 64 (". . . is there anything else you want to tell me?"); AR 72 ("Is there anything else you want me to consider?")) The ALJ also deferred an initial hearing in this matter after asking plaintiff whether he wanted the opportunity to prepare further or to get a representative. (AR 51-53.)

The ALJ did not, in any event, rely on any one factor in rejecting plaintiff's testimony. Considered as a whole, the Court finds the assessment supported by substantial evidence and any individual error in the reasoning harmless. *See Molina*, 674 F.3d at 1115 (error harmless where "'inconsequential to the ultimate nondisability determination.'"; court looks to "the record as a whole to determine whether the error alters the outcome of the case."); *Carmickle*, 533 F.3d at 1162-63 (error may be harmless where ALJ provides specific reasons and substantial evidence supports conclusion; question "is not whether the ALJ would have made a different decision absent any error, [but] whether the ALJ's decision remains legally valid, despite such error.").

/ / /

<u>Steps Four and Five</u>

Plaintiff argues the ALJ improperly determined his RFC and erred at step five given the errors in the consideration of the medical evidence and his symptom testimony. This mere restating of arguments does not establish error at step four or step five. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff also asserts unresolved conflicts between the Dictionary of Occupational Titles (DOT) and the testimony of the VE, and error in the ALJ's adoption of that testimony. The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995). An ALJ must inquire whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for the conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007); SSR 00-4p. The ALJ may rely on VE testimony contradicting the DOT, "but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435-36. Evidence sufficient to permit a deviation may include either specific findings as to the claimant's functionality or inferences drawn from the VE's testimony. *Light*, 119 F.3d at 794.

Plaintiff alleges an unresolved conflict between the RFC finding him capable of remembering and carrying out simple instructions at all times and detailed, complex tasks occasionally, and the "reasoning level three" jobs identified at step five. Reasoning level three work requires that an individual: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, App. C. Plaintiff argues the RFC is closer to reasoning level two work, which requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few

concrete variables in or from standardized situations." *Id.* He maintains error given the absence of an explanation for this deviation.

The Court finds no clear conflict. Plaintiff was not limited to jobs involving only simple instructions. *Cf. Zavalin v. Colvin*, 778 F.3d 842, 846-48 (9th Cir. 2015) (conflict between reasoning level three work and RFC restriction to simple, repetitive tasks). Nor was plaintiff limited to the "detailed but uninvolved" instructions provided for in reasoning level two work. *See Rounds v. Comm'r of Social Sec. Admin.*, 807 F.3d 996, 1003-04 (9th Cir. 2015) (conflict between limitation to one- and two-step tasks, and level two work requiring carrying out "'detailed but uninvolved written or oral instructions.'") (quoting DOT, App. C). The ALJ found plaintiff capable of performing both simple instructions and detailed and complex tasks.

Plaintiff contends the fact he could perform detailed, complex tasks only occasionally does not mean he could do so all of the time. Yet, neither the DOT definition of reasoning level three work, nor the DOT job descriptions at issue reflect the need to perform detailed and complex tasks all of the time or more than occasionally.[4] Given the absence of such a showing and the VE's

---

[4] *See* DOT 372.667-030 (Gate Guard) ("Guards entrance gate of industrial plant and grounds, warehouse, or other property to control traffic to and from buildings and grounds: Opens gate to allow entrance or exit of employees, truckers, and authorized visitors. Checks credentials or approved roster before admitting anyone. Issues passes at own discretion or on instructions from superiors. Directs visitors and truckers to various parts of grounds or buildings. Inspects outgoing traffic to prevent unauthorized removal of company property or products. May record number of trucks or other carriers entering and leaving. May perform maintenance duties, such as mowing lawns and sweeping gate areas. May require permits from employees for tools or materials taken from premises. May supervise use of time clocks for recording arrival and departure of employees[.] May answer telephone and transfer calls when switchboard is closed. When stationed at entrance to restricted area, such as explosives shed or research laboratory, may be designated Controlled-Area Checker (any industry); DOT 299.677-010 (Sales Attendant) ("Performs any combination of following duties to provide customer service in self-service store: Aids customers in locating merchandise. Answers questions from and provides information to customer about merchandise for sale. Obtains merchandise from stockroom when merchandise is not on floor. Arranges stock on shelves or racks in sales area. Directs or escorts customer to fitting or dressing rooms or to cashier. Keeps merchandise in order. Marks or tickets merchandise. Inventories stock.")

ORDER
PAGE - 19

testimony plaintiff could perform the jobs of gate guard and sales attendant with the limitations set forth in the RFC (AR 65-69), the Court finds no apparent conflict requiring further resolution and no associated error at step five.

Plaintiff also maintains an unexplained or inadequately explained conflict between the jobs of gate guard and sales attendant and an individual who cannot use his dominant arm for any lifting, carrying, pushing, or pulling. The Court disagrees.

The ALJ posed a hypothetical of an individual who could never lift or carry any weight or push or pull with his right arm, and clarified plaintiff is right-hand dominant. (AR 66-67.) The VE identified the positions of gate guard and sales attendant as jobs plaintiff could perform. (AR 67-69.) The VE confirmed the sales attendant job could be performed primarily with the non-dominant arm and, when asked whether the job would require moving the arm beyond forty-five degrees, responded: "Yeah. I'm thinking, I'm trying to think of a one armed person basically." (AR 69.) The VE testified use of the non-dominant arm would reduce the number of sales attendant jobs by fifty percent, down to 95,000 jobs in the national economy. (AR 37, 69-70.) The ALJ considered the VE's testimony the DOT did not account for use of only the non-dominant left upper extremity. She found the VE's testimony generally consistent with the DOT, relied on the VE's professional experience, and found the explanation for the discrepancy reasonable. (AR 38 (citing SSR 00-4p).) The ALJ therefore properly resolved a conflict with the DOT and appropriately relied on the VE's testimony and expertise in concluding plaintiff could perform a significant number of jobs in the national economy.

/ / /

/ / /

/ / /

ORDER
PAGE - 20

## <u>CONCLUSION</u>

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>29th</u> day of October, 2018.

Mary Alice Theiler
United States Magistrate Judge